The next case on our docket is Renee Reese v. Ryan Pollard that's been submitted on the briefs and so proceeding to the next case which is Joshua Aaron Holloman v. City of Los Angeles. If the council could please come forward. Whenever you're ready to proceed, Mr. Beshear. Good morning, your honors and may it please the court. I'm Robert Bastian. I'm here with my co-counsel Marina Ardini and we're here representing Joshua Aaron Holloman who is present here today. I'd ask for three minutes for rebuttal. I'd like to begin before I get into the issues of Salas and Nieves and all the several other moving parts in his brief. I'd like to start with just the issue of chalk and the absence of malice. Apologies to Newman. I would suggest that the act that Mr. Holloman engaged in of protected speech using removable chalk on a public sidewalk or a concrete driveway next to it outside a public building never ever evidences malice for purposes of Penal Code 574A with which he was charged. In other words, back when McKinney in the Ninth Amendment could think that writing with chalk would damage a sidewalk, it was kind of understood that chalk was permissive expressive conduct. Now obviously the law changed a little bit. It tweaked a little bit since McKinney, but in that interim time there didn't seem to be any dispute about that and it didn't seem to be any arrests occurring when that occurred much less a misdemeanor arrest or a felony arrest in this case. So what I would ask the court to consider is whether or not in light of the changes in PC 574A the law, actually the law needs a clear statement from this court. The officers that would make arrests under this action need a clear statement from this court that it is unreasonable for purposes of the First Amendment, it's overbroad, to interpret the idea of malice as being spraying chalk on public property. Now you'll notice in the report... Mr. Bestian, I'm struggling to understand. Are you, this wasn't an issue that was raised in your brief, are you asking us to opine on the wisdom of the California Legislature's decision to add chalking as a form of vandalism? Nope, not at all. What I'm suggesting is, well, first of all, the 574 does not expressly mention chalk, but that statute when it's interpreted properly could be used for chalk and I would give an example of a case where malice would be present in the situation and it wouldn't be ruled out in a case such as this. For example, if somebody wrote in chalk outside a courthouse, juror number six, I sure hope nothing bad happens to your daughter, that would not be protected speech and that on its face would be malicious, so you could arrest that person even if it was written in chalk. But not Black Lives Matter, not power to the people, that's protected speech, that's the difference. That's why what he's doing isn't malicious and that's why when the officer in his arrest report says, well, I thought it was malicious because A, he didn't ask for permission and B, he had gloves on. That is not a coherent interpretation. So in your view, you want us to rule that somehow the content of the message has to be malicious? I mean, even if you covered a building with garish covered chalk, that couldn't be malicious if the content of the message wasn't malicious? I'm not sure I understand what you're arguing. What I'm suggesting is that yes, in certain cases, if the content is not protected speech, if it's not protected speech like the example I just gave, then it would be okay to arrest somebody for using chalk in what is otherwise considered to be a protected place. Now, it's not a time, manner, place restriction that we're talking about. We're talking about a subjective element. And I would suggest to you that same malice portion of 574 that protected speech of Mr. Holloman protected the children when they were doing chalk in the turnabout on the other side of the police station. I don't know if this is how you really want to spend your time, which is, I think, valuable and there's questions regarding Gonzalez and Ballantyne, but let me just go ahead and ask you a question on what you are choosing to spend your time on. And that is, I mean, the children apparently, according to the police, had asked for permission. Does that not make a difference and does that not enter into the equation on whether it was malicious or unwelcome? Well, maybe I draw a distinction. The children in the roundabout behind the police station did not ask for permission. They just used chalk. But it's just assumed that that's not a violation of law, even though the only difference between the chalk being used there, because it's concrete right outside a police station, and the chalk that Mr. Holloman is using is concrete right outside a police station, but he's the one that's getting arrested. So what I'm suggesting for purposes of the Fourth Amendment, then, is that they did not have probable cause because his speech was protected and that's not malice. That cannot be malice in the state of California if it is, and that statute is being interpreted over broadly. So if a protester comes to the Ninth Circuit wall of this building and writes something that is not a criminal threat, they cannot be arrested for vandalism because they don't have criminal malice? Well, I don't think the wall has ever been considered public space the way the sidewalk has. But I mean, as I understand in this case, and looking at the video, it was not just a sidewalk. It was on the police station as well. I would say it was maybe two, three, or four steps at most. I mean, it was right outside the steps of the police station. There was the sidewalk and the concrete of the sidewalk merged, and that was where people would walk to the entrance of the police station. So that was out front. It wasn't on the wall of the police station. So, yeah, I think it would be different if somebody engaged in chalk outside the appellate court on the sidewalk. Yes, then I think they would have that right unless a time-place manager restriction had been created ahead of time, such as happened in Washington, D.C., outside the White House. Counsel, I think the children left pine cone art, not chalking. Two different events. The pine cones were in front, on top of the pedestal next to the station. The chalk on the turnabout was in back of the police station. Two different events. So, what I was making... That were going on at the same time as your client doing the chalking? No, the chalking in the turnabout was something that we found out about later and took photographs and put it into evidence. Can I ask you about Gonzalez? I think that was a Supreme Court case that seems to make clear when a plaintiff conducts research and review of previous arrest data that that kind of evidence, I think they refer to it as survey, is permissible type of evidence for consideration of whether the Nieves exception applies here. And so, if you could focus some of your time, you have about three minutes left before your rebuttal, on that. I recognize that the district court and you didn't have the helpful guidance provided by Gonzalez at the time that you opposed the defendant's motion for summary judgment. Would it be... What's the proper course for us now that Gonzalez, I think, shed some light on how we should maybe remand this to the district court based in light of some of its findings? Well, sure. The district court basically did the Fifth Circuit's pre-Gonzalez in the Supreme Court standard and basically said because the plaintiff was unable to provide any comparables, any single incident in which somebody had chalked and the police elected not to arrest, that that was dispositive of the case. And all the evidence that the appellant had provided were no. And that's because it almost never happens. And we did the depositions of the Office of Beautification for the city. And then the New Horizons, New Directions for Youth person that gets these things. And what she said is over the last 15 years, she gets 30 to 100 incidents, complaints or orders to go out and clean. And she can't remember a single time, a single time that anybody ever needed a cleanup of  And then the Office of Beautification, he's the one responsible for going in to testify in cases. And over the last eight years, he said he's never had an incidence where he's gone in and been asked to testify in a case that there was misdemeanor or felony damage because of the use of chalk. Well, can I ask counsel, because this was the district court's point, is that that was not strong enough evidence in his view because it doesn't speak to whether people have been for vandalism, chalking as opposed to felony prosecutions for them. And isn't that an important distinction? Well, no, I don't think so, because the Supreme Court basically said that any objective evidence could be used. And he was excluding all the other objective evidence that we were providing. I wondered how did he exclude it? Because he has a footnote where he talks about where he thinks the right comparison is someone who chalks in a police station. But at the end of the footnote, he says, but even if that's not the right comparison, he still found the evidence to be too weak to establish the exception. And he's analyzing this testimony from this witness. So I don't see it as excluding this evidence. He's considering it and not finding it weak. So why do you think that he was only relying on direct comparator evidence as the only way to resolve this issue? Well, first of all, if you're going to use that footnote and the court says that he thinks the evidence is too weak, that sounds to me like he's evaluating what evidence that at this stage of the proceeding is evidence that should be viewed in the light most favorable to the non-moving party, which would be Plaintiff Holloman. And then as I just expressed to you, what formerly prior to Gonzalez was considered not evidence, now when you look at the fact that we can't find another case where somebody was arrested under similar circumstances. The example that you heard earlier in the argument earlier today that the Supreme Court used is that, okay, it would be like arresting somebody in the middle of the country for jaywalking. Would it be not surprising that you can't even find cases where somebody is arrested in the middle of the country for jaywalking? And this is the same similar thing. Finally, because I know that I'm running low on time, I'd love to address the Chia Varini case. Because the Chia Varini case that the Supreme Court handed down the same day as Gonzalez basically says that there's a separate cause of action for the felony charge against him because but for that felony charge, he would not have been kept until after midnight the next day. He wouldn't have been kept those nine hours. He wouldn't have had to hit the higher bail. And he wouldn't have had to be reporting a felony arrest. And that cause of action stands separately from the false arrest claim, which we suggest it does meet the Nieve's exception. And I don't have time to get to the state stuff. But I'll answer any questions if you want. Okay. We have 41 seconds left. Thank you. Thank you. Counsel? Good morning, Your Honors. May it please the Court. Brian Chang, Deputy City Attorney, on behalf of the appellees in this case, all of which are related to the City of Los Angeles, including the police officers. In this case, what we have is a rather clear and simple situation of police officers witnessing a crime in progress and making an arrest. Now, in this case, the crime was rather brazen. The crime took place on police station property, in broad daylight, and in plain view of the police officers. Mr. Chang, just to clarify that point, because counsel suggested that the police officers were on the sidewalk in front of the police station, but you're saying it's on police station property itself. Or was a portion of it on the sidewalk as well? Or can you clarify that from your point of view? Sure. There's no question, and I'm talking about the video evidence in this case, which is what I believe both parties believe that Your Honors should rely on for deciding what facts happened in this case. There's no question that Mr. Holloman included the pedestal of the police station sign in his vandalism. Graffiti was definitely sprayed with spray chalk on the pedestal of the police station sign, as well as elsewhere. And as long as I'm talking about spray chalk, I would like to make that distinction, Your Honors. The briefs of Mr. Holloman continually and repeatedly talk about chalk. And the cases that talk about chalk, by and large, talk about handheld chalk that we're all used to. This is spray chalk. It's different. It comes in a metal container. It sprays out. There's instructions on the containers that say that if it's left out in the sun too long, it becomes difficult to remove. The officers in this case testified that they had never even heard of spray chalk before. I have also never heard of spray chalk before in this case. Does the testimony or statement from Jerry Valido, would that encompass, I guess, spray chalk if it had ever been used before? I mean, when he says that he doesn't know of prosecutions for this, I mean, wouldn't that encompass any possible prosecutions for spray chalking? I suppose it would. I don't know if that ever has been used before. Now, I do realize that in his argument, my friend says that arrests for chalking almost never happens. I would submit that Mr. Holloman's actions of vandalizing a police station purposely in broad daylight in front of police officers almost never happens as well. Let me ask about Gonzalez. The Supreme Court makes clear that you don't need to have just direct comparator evidence, that other forms of objective evidence should come in. And some evidence can be harder to come by than others. And it seems to me, at least, that evidence of arrests based on chalking or spray chalking is relevant. Is that evidence available or was that evidence available to the parties? Well, certainly not presented by Mr. Holloman, who, because probable cause exists in this case for an arrest for vandalism, the burden shifts to him to present such evidence. Now, if I may stay on the topic of the Gonzalez case, Gonzalez did not overrule or supplant Nieves. Gonzalez simply said that the Fifth Circuit did not apply the Nieves test correctly. And then the Gonzalez court sent the case back to the lower courts to determine if this evidence satisfied the Nieves test when it's applied correctly. So certainly if- There was a comment in there that said it's not limited to direct comparator evidence. And I think the understanding with some people, I think, of Nieves before that was that it had to be direct comparator evidence. So it sort of opens the door here to question whether or not now, in light of Gonzalez making that statement, I don't know if you agree with that statement or not, that you can consider more than direct comparator evidence? With respect, what the Gonzalez case actually says is that, quote, virtually identical and identifiable comparators is not necessary for the Nieves test. Virtually identical. Now, the Nieves test still requires similarly situated individuals. And the first paragraph of the Gonzalez opinion explains that the Nieves test requires that, but simply that the Fifth Circuit did not properly apply the principle. But why can't we infer from Valido's testimony that there haven't been prosecutions for use of chalk, that there also haven't been arrests? Why can you not infer that? Right. I mean, I assume that you would say that we can't. Why not, if we can't? Why is his testimony not the kind of testimony that the court should be taking into account under Nieves and Gonzalez? Well, the court did take it into account, but simply found that it was not the type of evidence that Nieves requires. Well, your view is that the court thought that this evidence from Valido is not the type of evidence that's permissible to consider under Nieves? It's not objective evidence that shows that other similarly situated individuals were not arrested in similar circumstances when they did the same or similar actions, but without the speech. Then it sounds like you're agreeing with the counsel on the opposing side that the court was applying a direct comparator framework for analyzing the Nieves exception. No, so virtually identical is not required. Similarly situated is required. You're saying that's all that the Supreme Court said in Gonzalez, is that it just clarified that it doesn't have to be virtually identical? You don't think it opened the door to more evidence like surveys or anything else? That's your view of Gonzalez? Gonzalez simply found that the Fifth Circuit did not apply the Nieves test correctly. But it made a comment regarding the comparator evidence and left, it seemed to leave the door open to more than what I think you're trying to argue, that it was only virtually similarly comparative evidence. I'm confused by what your view of Gonzalez is. Your Honor, the reason that the Valido evidence was not sufficient for the Nieves test is that it only, that testimony only dealt with trials. He said he'd never had testified in a criminal trial that dealt with chalking vandalism. And the reason that that doesn't, that that is insufficient evidence for arrests is because as we all know, the vast majority of criminal cases are, they fall short of trial. And they're resolved short of trial. So the fact that, even in this case, Mr. Holloman did not go to trial. So even in this case where we know he was arrested for chalking vandalism, Mr. Valido would not have testified in this case. So that evidence does not go to arrests. Okay. Okay. Now I understand your answer. But then if that's the case, then it's not that the only evidence he can look at is someone who was arrested for chalking a police station. Correct. A party can come in with other objective evidence to see if it meets the criteria for the Nieves exception. And that might include, for example, you know, we had a recent case, Ballantine, where you had direct comparative evidence of people chalking in front of a police station and in front of the state court, the courthouse. And evidence that other chalkers were never arrested, even if they were chalking at the same time. So, you know, you had elements of both. And I guess what I'm trying to understand, and I think my colleagues as well, is what do we make of the Valido evidence and whether we can infer from that that people don't get arrested for it, even if they're not prosecuted for vandalism, for chalking. So in Ballantine, of course, that satisfies the Nieves test. We're talking about people there doing the same activity at the same time without the political speech, and they were not arrested. Obviously, that is proper evidence under the Nieves test. But the court also relied on a second category, which were that people weren't arrested for this sort of activity. There was no evidence in the record of any arrests for it, too. You mean in Gonzalez? No, in Ballantine. In Ballantine, the court did not rely only on the fact that there were other chalkers who were not arrested. The court also observed that there was no evidence of anyone ever getting arrested for this sort of thing. So in this particular case at hand, I highly doubt that we'd be able to find someone who was arrested for virtually identical activity, which is not what the test would be anyway, because who would do something like this? Virtually identical is not needed, but similarly situated is. So let's take this case, for example. We probably won't find someone who was- But Gonzalez said that survey evidence was permissible. Yes. Okay. So was there survey evidence here? Is that Valido? Could there have been more survey that could have been done? Do we need to let them figure that out, go back to the district court and figure that out? Because I don't know that you're accounting for that. Well, they had their chance to come up with the evidence, too. But they didn't know about Gonzalez before. Gonzalez came out afterwards. And had they known about Gonzalez, could they have gotten more police records or arrest records or surveys or anything like that? That's my question, because Gonzalez seems to have changed this a little bit, filled it out a little bit more, loosened it up somewhat. In other words, does the police have records of arrests that would either clarify one way or the other whether people get arrested for spray chalking vandalism, whether it's at a police station or elsewhere in a more general survey type way that might illuminate for the district court what to do here? Is that evidence out there? Well, I don't know whether it's out there. It certainly was not presented in this case. The point in Gonzalez is that that type of evidence where it's a similar crime and people were not arrested, that evidence did not exist in this case at hand. Mr. Holloman did not present that type of evidence, objective evidence on arrest. So for example, if we take a step back from requiring identical evidence, which Gonzalez is not required, it never was, never was required. So let's even say it doesn't have to be someone actually vandalizing a police station. Simply committing vandalism in front of police officers that are witnessing it, Mr. Holloman does not present any evidence that that happens with content-neutral graffiti and the police officers decide not to arrest that person. Similarly situated, not identical, and no arrests made. Mr. Holloman does not present any evidence of that type of situation. Let me ask you this. One thing that's unclear in my mind, we're reviewing this, I guess, from summary judgment. And we have this Nevis exception in the court. You know, post-Gonzalez, the district courts will play a gatekeeping role in this. Do we, is that a legal question that the district court would decide the strength of the evidence for the Nevis exception to apply? Or is that a tribal issue that a jury would have to determine whether the Nevis exception should apply or not, and then proceed with the rest of a First Amendment retaliation claim? The Nevis test, although it does require evidence, the Nevis test is a legal question. So in your view, it's a legal question, the court will evaluate the evidence and decide if there's enough there to proceed with a First Amendment retaliation claim, and then that gets decided by a jury. But that's not subject to our summary judgment standards that we would normally apply about whether there's a tribal issue here or not. The tribal issue applies to findings of fact. So the evidence that would be presented in the Nevis test would go towards the legal finding of whether the Nevis test is met. Okay. And would Your Honor like me to address the issue of maliciousness at all? Thank you. Thank you. And no, if you ask me about maliciousness, no, thank you. Okay, so in- You have a minute, I'll give you a minute, and then you're 36. Thank you. In the matter of Gonzalez versus Trevino, after the court decided that it was unfair that Ms. Gonzalez was asked to come up with a comparative event, they basically said that the district court and the circuit court below, their interpretation of what evidence would establish that was crimped, too crimped, that was their word, it's in the opinion, and that any objective evidence is potentially available. And then they remanded to the district, the circuit, to the district court in the Fifth Circuit. So, yes, and those objective facts- Counsel, can I ask, did you ask for or seek arrest records? Oh, yes. I mean, that was, because we weren't getting anything, that was the main reason that we deposed those three persons, is we were trying to get any evidence somewhere that somebody's been arrested for talking. And we weren't able to get it. And you weren't able to get it because, why? I mean, I just want to get, because you asked for it, no, and they said, we can't give it to you, or they said it doesn't exist, or- If somebody had been arrested for talking, there would have had to have been a cleanup afterwards, and it would have had to go through the people that we've deposed. And they said, it's never happened. But the people who do the cleanup won't know whether someone's been arrested for the talking, right? I mean, I sense the challenge in trying to come up with this information, but what we're trying to find out is, if we were to send this back, could you get access to records that are at least a little more illuminating about this issue or not? What would I do? Go through every single- Well, it's up to you. You would have to establish the name. No one's telling you to do this, but if you want to establish the name of this exception and find similarly situated people through survey evidence- It was a rhetorical question that I was phrasing, and the reason I was phrasing it like that is, we are trying to solve this knot. It is, when it has never happened, it's hard to find it. Well, I mean, I will say, intuitively, I understand counsel's point that if someone starts to go and chalk a police station in broad daylight in front of officers, it's a little bit hard to believe that they wouldn't be arrested regardless of whatever message is occurring. I mean, not just spray painting, spray chalking, right on police property itself. Isn't that so? Well, except I don't think there's a comparator here. That's my point. If there isn't a comparator, you have to prove it through alternative means. And I think what you're asking me is, couldn't you do some more discovery and come up with a comparator? And that goes back to my point. If nobody's been arrested for jaywalking out in the country, searching for it is a fool's errand, which is why we look for objective facts through other sources that you can make inferences from that it just hasn't happened. So if I went back and did more discovery, I could try to come up with ideas to prove even more ways that it hasn't happened. But I'm suggesting to you that it hasn't happened, but that doesn't rule out. So you don't think the comparative evidence is there for you? What I'm suggesting is we're not bound to comparative evidence in the light of the controls. Sorry, survey evidence. Possibly, unless I haven't, I mean... We're beyond your time, but I'm just having trouble understanding. What is your view of Gonzales? My view of Gonzales is we are no longer bound to comparative evidence. And if you've produced objective evidence... All objective evidence? Or is that what you're saying based on what's written in Gonzales? Because I think, you know, the plaintiff conducts research and review of previous arrest data. This survey is permissible type of evidence. We know that specific comparative evidence is not required, but it looks like it allows for survey evidence. I don't know. Maybe you can make an argument for something else in light of Gonzales. That's what I was hoping to hear today, and I haven't heard one thing about it until right now. We need to produce objective evidence. Close to a survey is if you do a survey to find out whether or not anybody has ever put in a request that's connected with a case. And what I would suggest, because of those three opponents, if there had been a case, it would have gone through them. Okay. Thank you very much. Appreciate your response. Thank you both for your oral argument presentations. The case of Stephen Hubbard and Amy Back versus the City of San Diego is now submitted. The next-
judges: MURGUIA, SANCHEZ, THOMAS